**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240163-U

Order filed November 14, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| TONI PICCIOLA, individually and as Special Administrator of the ESTATE OF MICHAEL WILKEY, deceased, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) ) | Appeal No. 3-24-0163 Circuit No. 18-L760 |
| v. | ) ) ) | Honorable Roger D. Rickmon, |
| CHURCH OF GOD OF PROPHECY OF WILMINGTON, et. al., | ) ) ) | Judge, Presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The circuit court did not err when it denied the defendant's motion to dismiss the complaint for lack of personal jurisdiction.

¶ 2      Plaintiff, Toni Picciola, brought a wrongful death suit following the death of her son, Michael Wilkey. Wilkey died following injuries sustained at a property owned by the defendant, Church of God of Prophecy of Wilmington. The church was incorporated at different times as a

religious corporation (RC) and a not-for-profit corporation (NFP). The circuit court dismissed the NFP as having been previously dissolved but denied a motion to dismiss the RC. The RC brought an interlocutory appeal of the circuit court's denial of the motion to dismiss.

¶ 3                                                I. BACKGROUND

¶ 4        The complaint at issue in this appeal alleged that on December 26, 2017, Wilkey was a guest at the home of Jeff and Amanda Urban. Their home was located at 1800 S. Water Street in Wilmington, Illinois ("1800 S. Water Street"). According to the complaint, the home was owned by Church of God of Prophecy, and the Urbans resided there "pursuant to an employment relationship between Jeff *** and the owner of record, Church of God of Prophecy of Wilmington, an Illinois Non-Profit Corporation." On that date, at approximately 11:30 p.m., the Urbans' son believed he heard a suspicious noise. He retrieved a loaded, unsecured firearm from a closet and ran to investigate. He then tripped on an extension cord, which "resulted in the firearm discharging and fatally injuring [Wilkey]."

¶ 5        Picciola brought suit against the Urbans on August 29, 2018, then filed an amended complaint naming the Church of God of Prophecy of Wilmington and any "Unknown Owners" as defendants on February 25, 2019. The amended complaint noted that the Illinois Secretary of State listed the church as an involuntarily dissolved non-profit, but "[t]he regular activities of the Church at 1800 S. Water Street continued post-dissolution [ ] and were occurring at all times relevant to this complaint." The complaint expressed its intent to bring suit against "the Directors or beneficiaries designated in the Corporate documents" who obtained title to the home and were "authorized to conduct the business of that non-profit." The amended complaint was served on Ron Benge, the registered agent for the NFP.

2

¶ 6      The court entered a default judgment against all defendants on November 20, 2019. On December 21, 2020, the NFP entered an appearance, moved to vacate the default judgment, and moved to dismiss the NFP as a defendant. In the course of the ensuing litigation, the following information was adduced:

¶ 7      A RC called "Church of God of Prophecy of Wilmington, Illinois" was organized on September 16, 1988. The RC was duly registered with the Will County Recorder's Office pursuant to the Religious Corporations Act by filing an Affidavit of Organization. See 805 ILCS 110/0.01 *et seq.* (West 1988). On November 14, 1997, the RC recorded a warranty deed for the property at 1800 S. Water Street. On July 25, 2007, the RC adopted an amendment to its Affidavit of Organization, electing to operate under a new name: "Lighthouse Ministries International Church, Inc." The RC filed the amendment with the Will County Recorder's Office.

¶ 8      On September 23, 2007, articles of incorporation were filed with the Illinois Secretary of State pursuant to the General Not For Profit Corporation Act (805 ILCS 105/101.01 *et seq.*) (West 2006) creating a NFP called "Lighthouse Ministries International Church." The registered agent for the NFP was Richard Lang, and Ron Benge was listed as a director.

¶ 9      On October 19, 2008, the RC changed its registered agent to Ron Benge and filed that change with the Will County Recorder's Office. On November 6, 2008, the NFP also changed its registered agent to Benge and filed that change with the Secretary of State. On February 2, 2009, the NFP changed its name to "Church of God of Prophecy of Wilmington" by filing the Articles of Amendment with the Secretary of State. On February 24, 2009, the RC also changed its name to "Church of God of Prophecy of Wilmington" by notifying the Will County Recorder's Office.

On February 10, 2017, the NFP was administratively dissolved for failing to file an annual report.

¶ 10     On July 27, 2022, the circuit court granted the NFP's motion to vacate the default judgment, and on July 13, 2023, the circuit court granted the NFP's motion to dismiss it as a defendant with prejudice. Picciola then moved for a default judgment against the defendant RC. The circuit court ordered the defendant RC to answer or otherwise plead on December 5, 2023. The defendant filed an appearance objecting to jurisdiction on January 2, 2024, and filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2-301 of the Code of Civil Procedure (Code). 735 ILCS 5/2-301 (West 2024). The court denied the motion on January 31, 2024, and the defendant brought this interlocutory appeal.

¶ 11                                   II. ANALYSIS

¶ 12     On appeal, the defendant contends the circuit court erred when it denied its motion to dismiss because (1) according to the defendant, the RC and the NFP are the same entity and the court's dismissal of the NFP should therefore bar Picciola from bringing suit against the defendant RC, and (2) in the alternative, Picciola failed to obtain personal jurisdiction over the defendant by failing to issue a separate summons or name the defendant RC. We review the circuit court's determination of a section 2-301 motion based on documentary evidence and the pleadings *de novo*. *KSAC Corp. v. Recycle Free*, *Inc.*, 364 Ill. App. 3d 593, 594 (2006).

¶ 13     In support of its first contention, the defendant points to the RC's actions in 2007 when it changed its name to Lighthouse Ministries International Church, Inc. Shortly thereafter, a NFP with a nearly identical name was registered with the Secretary of State. The defendant contends that from that point forward it "became a not-for-profit corporation." The defendant asserts that

4

"[i]t makes no sense that the church would operate two separate legal entities with the same name."

¶ 14    In Illinois, any church, congregation, or society may incorporate as a religious corporation. 805 ILCS 110/0.01 *et seq.* A church may also incorporate under the General Not For Profit Corporation Act. *Id.* § 105/101.01 *et seq.* Filings under the Religious Corporation Act are made with the recorder's office "of the county in which such congregation, church or society is organized \*\*\*." *Id.* § 110/36. Filings under the General Not-For-Profit Corporation Act are made with the Secretary of State. See *Id.* § 105/101.10.

¶ 15    Here, the church incorporated under the Religious Corporation Act, then incorporated separately under the General Not For Profit Corporation Act. After reviewing the record, we can find no evidence to suggest the defendant RC "became" the NFP. Specifically, the record contains no minutes or corporate filings suggesting the RC intended to wind down, dissolve, or merge into the NFP. To the contrary, after the creation of the NFP, the RC and the NFP continued to file separate documents with the Will County Recorder's Office and the Secretary of State. Perhaps more tellingly, the RC never transferred control or ownership of 1800 S. Water Street to the NFP. Adopting the same corporate name did not legally merge the two entities. See *People ex. rel. Stony Island Church of Christ v. Mannings*, 156 Ill. App. 3d 356, 363 (1987) (church's creation of an entity under the General Not For Profit Corporation Act, without evidence of merger or consolidation, was insufficient to transform a RC into a NFP). Accordingly, we conclude the RC and the NFP were separately formed and continued to operate as separate legal entities.

¶ 16    Next, the defendant contends Picciola failed to obtain personal jurisdiction over the defendant RC because Picciola issued only a single summons. Further, the defendant insists the

5

complaint failed to name the RC because it described only "one corporate defendant—the NFP." [App. Br.9]

¶ 17      In Illinois, a private corporation may be served "(1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILCS 5/2-204 (West 2018). The defendant correctly notes that, in general, each defendant must be served with a separate summons. Ill. S. Ct. R. 131(c) (eff. Jan. 1, 2018). However, there are exceptions to that general rule. For example, "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the other." *Slates v. International House of Pancakes*, *Inc.*, 90 Ill. App. 3d 716, 725 (1980).

¶ 18      The defendant does not dispute that Ron Benge was the registered agent for both the RC and the NFP. Additionally, the RC and the NFP had identical names and were registered at the same address at the time the complaint was served. And, as the defendant RC itself argues in its briefs, the RC and the NFP were functionally identical—the sole differences being that (1) the RC owned the property out of which both corporations operated and (2) the NFP had been administratively dissolved at the time Picciola brought suit. Under these circumstances, we hold that serving Ron Benge was sufficient to place both the RC and the NFP on notice that a claim was pending against the church, however incorporated. Picciola's claim unambiguously sought recovery against the church, or whoever owned the property at 1800 S. Water Street.

¶ 19      The complaint explicitly acknowledged the dissolution of the NFP and noted the continued activities of the church. In fact, the complaint made clear it was *not* attempting to name the NFP and was instead attempting to bring suit against the current owner of 1800 S.

6

Water Street or whoever was "authorized to conduct the business of [the NFP]." The church's decision to incorporate twice using identical names is precisely the type of uncertainty Picciola's complaint attempted to anticipate. In any event, the complaint contained no separate theories of liability that would apply to the RC and not the NFP (had the NFP still been extant). There is also no other name Picciola could have used to obtain service on the RC, and the complaint was served upon the RC's registered agent. Under these circumstances, we hold the complaint was adequate to place the RC on notice of the suit. Accordingly, the circuit court did not err when it denied the defendant RC's motion to dismiss it for lack of personal jurisdiction.

¶ 20                                    III. CONCLUSION

¶ 21        The judgment of the circuit court of Will County is affirmed.

¶ 22        Affirmed.